THE defendant was indicted for an assault and battery and false imprisonment. *Page 506 
He was indicted with Hugh Lafferty and William Thorne, in two indictments. Thorne was dead; and the court permitted the remaining defendants to sever. Both cases against this defendant were tried together.
Isaac Nathans, (negro.) — Last February, between 10 and 11 o'clock at night, on a Saturday night, some one rapped at my door, in Wilmington. I had gone to bed. I thought it was some of the boys plagueing me, and I said not so fast. They then broke the hasp of the door, arrested me and the other men, and took us to the town hall, where I remained all night. There were three of them; James Brown was one of them. I was taken before the Mayor next morning and discharged. Brown told the Mayor I drew an axe on him. I did not. They made no charge against me; showed no warrant; did not say they were officers. My door was locked; they broke it open. I have a family; a wife and children. I have had fifty-one
children, by three wives; fourteen by the first, fifteen by the second and twenty-one by the third, all born alive.
Mr. Gilpin for the defence. — The defendant is a man of good character; a night watchman of the city, and a very faithful officer; his beat is in the Fifth Ward, where I reside, and I appear for him only to see that he is protected in the proper discharge of his duty, and no further. The watchmen are placed by the ordinances of the city in the place of constables, having power to arrest; and being obliged also to arrest in many cases, promptly, without warrant; and to suppress riots and disturbances of the peace. In the discharge of this duty, the defendant on that occasion arrested one Elijah Loper, a notorious thief, having on his person a bundle containing chickens, articles of female apparel, and other things. Loper got away and fled, as the watchman was informed, to this house. The defendant went there with other watchmen and rapped; the door was opened; they entered; some one escaped by the roof, and they arrested three negroes, and took them to the hall.
In the two cases against James Brown, the jury convicted him in one case, and acquitted him in the other.
in pronouncing sentence, said the court would have due regard to the public policy of sustaining police officers in the faithful discharge of their duty, while they would always protect the citizen, of whatever cast or color, from oppression and abuse of official authority. Peace officers were often called on at the moment *Page 507 
to decide as to the true line of conduct; and a mistake of power, or of propriety, should not be visited too severely, if there was an absence of malicious or reckless purpose. A peace officer, such as a constable or sheriff, has the right to arrest, even without warrant, a person concerned in a breach of the peace, or other crime; or when he has reasonable ground to suspect the party of such offence. Whether such power is conferred on city watchmen who are not constables, depends upon the extent and force of the city ordinances, which were not before the court; but with or without an ordinance, the defendant had no right, on the facts proved, to arrest and imprison Isaac Nathans. Still it appeared to the court that there was nothing of intentional wrong, or of malice, on the part of the defendant. He had arrested a notorious felon, who had escaped from his custody, and taken refuge, as he was informed, in the house of Nathans. It was with the purpose of re-arresting the fugitive that the watchmen entered this house, and went beyond their authority in arresting a man against whom there was no charge.
 The court fined him $10 and costs.